```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #:_____               │
│ DATE FILED: 10/21/2021               │
└─────────────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

NELSON A. HERRERA,

                       Plaintiff,

        -against-

COMMISSIONER OF SOCIAL SECURITY,

                       Defendant.

-----------------------------------------------------------------X

**OPINION**

**20-CV-7910 (KHP)**

**KATHARINE H. PARKER, UNITED STATED MAGISTRATE JUDGE**

      Plaintiff Nelson A. Herrera ("Plaintiff"), who is represented by counsel, commenced this

action against Defendant Commissioner of the Social Security Administration (the

"Commissioner"), pursuant to the Social Security Act (the "Act"), 42 U.S.C. § 405(g).  Plaintiff

seeks review of the Commissioner's decision that Plaintiff was not disabled under Sections

216(i) and 223(d) of the Act from March 14, 2017 – Plaintiff's alleged disability onset date –

through October 2, 2019, the date of the Administrative Law Judge's ("ALJ") decision.

## BACKGROUND

      Herrera, who was born in 1973, suffers from spine issues/degenerative disc disease,

scoliosis, and lumbar radiculopathy.[1]  (Compl. ¶ 6.)  He complains about pain in his upper and

lower back, numbness in his legs, and vision problems.  (A.R. 89, 92, 93, 98, 261.)  He testified

---

[1] Radiculopathy describes a range of symptoms produced by the pinching of a nerve root in the spinal column. The pinched nerve can occur at different areas along the spine (cervical, thoracic, and lumbar). *See* https://www.hopkinsmedicine.org/health/conditions-and-diseases/radiculopathy#:~:text=Radiculopathy%20describes%20a%20range%20of,%2C%20weakness%2C%20numbness%20and%20tingling.

that he needs to walk with a cane and that he cannot sit for more than an hour or stand for more than thirty minutes, and that he needs help with many tasks of daily living such as cooking, cleaning, shopping, and dressing himself.  (A.R. 94-95, 102-03.)

Herrera previously worked as a hi-lo operator (i.e., a forklift operator) and a machine operator at a window factory putting markings on windows.  He was in a car accident in late 2013 and sustained neck and back injuries, leading him to seek treatment for back and neck pain.  He quit his last job, which entailed loading and unloading trucks and lifting, because of his complaints of ongoing back pain.  Herrera does not speak or write in English and stopped attending school after the eighth grade.  He seeks disability benefits for the period March 14, 2017, the onset date of his alleged disability, through the date when the ALJ issued her opinion on October 2, 2019.  (J.S. 1, 3; A.R. 9, 44, 50, 94, 468.)

I. *Summary of Relevant Medical Evidence*

The Administrative Record reflects that Plaintiff had four treating medical sources, consisting of a family nurse practitioner, Alma Mesquita; two surgeons; and a neurologist, Teresella Gondolo.  Additionally, the Social Security Administration tasked one doctor, Aurelio Salon, a specialist in internal medicine, to provide a consultation in connection with Plaintiff's claim.

### a. Alma Mesquita, Family Nurse Practitioner

Plaintiff began treatment for neck and lower back pain with Alma Mesquita, FNP, in 2013, shortly after he was in a car accident, and continued to see her for treatment through 2019.  According to her records, Herrera could not lift more than five pounds or bend forward without pain.  (A.R. 519-521.)  Plaintiff was prescribed various pain medications that controlled his pain, but they made him sleepy.  (A.R. 495, 512, 515.)  Her treatment notes over the years reflected complaints of pain, and findings of stiffness, reduced range of motion in the neck and/or lower back, and sometimes indicated an unsteady gait with use of a cane.  However, her notes during 2018 and 2019 also show full range of motion and no evidence of impaired neurological functioning. (A.R. 508, 510, 512, 513-17, 580.)

Alma Mesquita completed four Medical Report forms in connection with Plaintiff's claim for Social Security disability benefits. (A.R. 492-497, 497-501, 569-571, 582-583.)

On August 25, 2017, Mesquita noted symptoms of pain, decreased range of motion and neuropathy in arms and legs, difficulty walking and muscle spasms. (A.R. 492-497.) Additionally, she opined that the Plaintiff could not stand and/or walk more than one hour per day, sit for more than two hours per day, and lift more than ten pounds.  (*Id*.)  She also found him limited in being able to push, pull, and do fine manipulation, but did not specify the extent of his limitation. (*Id*.)

On October 9, 2018, Mesquita completed another medical report that detailed that Plaintiff was limited to standing and walking for two hours per day, sitting for two hours per day, and lifting up to ten pounds.  (A.R. 497-501.)  She also indicated that use of arms is limited to less than 1/3 of a workday for grasping, pushing, pulling, and fine manipulation. (*Id.*)  She diagnosed Plaintiff with lumbago and cervicalgia (neck pain), but did not rely on any test results or objective findings such as MRI Reports in making the diagnosis.  (A.R. 498.)

On February 12, 2019, Mesquita completed an Unum Disability Status Update form whereby she diagnosed Plaintiff had lumbago and cervicalgia; had symptoms of chronic lower back pain with stiffness; and an inability to flex forward. (A.R. 569-571.)  She also stated that Plaintiff was unable to sit for more than 30 minutes without changing position and that the Plaintiff required a cane to walk.  (*Id.*)

On September 3, 2019, Mesquita completed a form that opined that Plaintiff met the elements of the Listing of Impairments – titled "Listing §1.04C – LUMBAR SPINAL STENOSIS," and stated that this was confirmed by a 2016 MRI.  (A.R. 582-583; J.S. 8.)  She also said that Plaintiff had pseudoclaudication[2] and chronic nonradicular pain.  (*Id*.)  Lastly, she said that he has muscle weakness, stating that he had bilateral muscle weakness in the upper extremities with tingling, and in the lower extremities "has knees giving up." (*Id*.)  She was also concerned

---

[2] Pseudoclaudication can be a symptom of lumbar spinal stenosis, a condition that occurs when the spinal canal narrows in your lower back. This narrowing can be caused by bulging disks, bone spurs or a thickening of the supportive ligaments in the back of the spinal canal. *See* https://www.mayoclinic.org/diseases-conditions/spinal-stenosis/expert-answers/pseudoclaudication/faq-20057779.

about Plaintiff's ability to ambulate effectively, and indicated Plaintiff could not walk a block at a reasonable pace on rough or uneven surfaces, could not use standard public transportation, could not carry out routine ambulatory activities including grocery and clothes shopping and banking, and could not climb several stairs at a reasonable pace with use of only a single handrail.  (*Id*.)  She also said he needed a cane. (*Id*.)  This report appears to be based on a 2016 MRI Report and does not mention more recent 2018 or 2019 MRI Reports. (*Id*.)

### b.   Surgeons: Dr. Arden M. Kaisman, M.D. and Dr. Andrew Merola

Plaintiff underwent two different surgical procedures to address his ongoing back pain. First, on August 29, 2014, Dr. Arden Kaisman performed a discectomy[3] and decompression of the L5-S1 lumbar spinal disc.  Later, on March 15, 2017, Dr. Andrew Merola performed a L5-S1 laminectomy.[4]  (A.R. 417-422; 470, 474-475.)

### c.   Magnetic Resonance Imaging ("MRI") Reports

As part of his treatment, Plaintiff's doctors ordered various MRI Reports of his lumbar and cervical spine.  A 2014 MRI revealed a diffuse disc bulge at L5-S1. (J.S. 5.)  In July of 2016, a lumbar spine MRI revealed a " . . . broad disc bulge with a superimposed right paracentral disc

---

[3] Discectomy is surgery to remove lumbar (low back) herniated disc material that is pressing on a nerve root or the spinal cord. *See* https://www.uofmhealth.org/health-library/hw218424#:~:text=Discectomy%20is%20surgery%20to%20remove,a%20smaller%20cut%20(incision).

[4] Lumbar laminectomy, also called open decompression, is a surgical procedure performed to treat the symptoms of central spinal stenosis or narrowing of the spinal canal. The surgery involves removal of all or part of the lamina (posterior part of the vertebra) to provide more space for the compressed spinal cord and/or nerve roots. *See* https://www.spine-health.com/treatment/back-surgery/lumbar-laminectomy-surgery-spinal-stenosis-open-decompression

protrusion causing moderate spinal stenosis and severe narrowing of the right lateral recess."

(A.R. 397-399; J.S. 5.)  A cervical spine MRI taken at the same time revealed "multiple disc

bulges at C3-4, C5-6, C7-T1, with impingement on lateral recesses." (J.S. 6.)  The 2017 surgical

procedure performed by Dr. Merola appears to have improved Plaintiff's back.  Specifically, on

July 9, 2018, a cervical spine MRI revealed no severe abnormalities. (A.R. 553-557.)  A January

23, 2019 lumbar spine MRI similarly revealed no disc herniation, spinal stenosis or foraminal

stenosis in L-1-L5.  (A.R. 502-503.)  However, it showed a "slight annular bulge at L4-5," and an

annular bulge at L5-S1 described as "a broad annular bulge which contacts the S1 nerve roots

bilaterally and in combination with facet joint hypertrophy narrows the neural foramina."  (*Id.*)

A previously observed disc herniation was no longer evident (presumably because of Plaintiff's

2017 surgery), and no new disc herniations were identified.  (J.S. 6.)

> ### d.  *Teresella Gondolo, M.D., Neurologist*

Plaintiff began seeing neurologist, Dr. Gondolo, on February 1, 2016 and continuing

through 2019.  (J.S. 9.)  Dr. Gondolo's treatment notes indicate that spinal examinations were

performed at each visit and did not reveal any objective sign of any pain, spinal disease,

reduced range of motion, spasms, tenderness, loss of strength, or reflexes. (*Id.*)  Rather, for the

most part, her treatment notes post-dating Plaintiff's March 2017 surgery through 2019

indicate findings of painless neck and back motion, intact sensation, full motor strength, normal

gait, negative straight leg raising test, and no spasm or tenderness. (A.R. 392-396, 518-568,

584-592.)  In addition, Dr. Gondolo performed nerve conduction studies on Plaintiff in May

2017 and April 2018.  (A.R. 47-48, 518-552.)  These tests were done to evaluate Plaintiff's

complaints of numbness in his legs and complaints of pain in arms and legs.  On both dates,

motor nerve conduction studies, as well as sensory nerve conduction studies were within

normal limits with no abnormal findings. (A.R. 47-48, 553-65.)  Nonetheless, due to Plaintiff's

ongoing reports of pain, Dr. Gondolo prescribed various medications such as anti-

inflammatories, to treat Plaintiff's pain in 2017, 2018, and 2019.  (A.R. 518-52.)

The only treatment record from Dr. Gondola indicating any physical limitation was from

January 16, 2019, when Dr. Gondola noted a finding of a severe limitation on flexion extension

with paraspinal muscle spasm of his cervical spine and lumbar spine. (A.R. 518.)  However, she

also found that Herrera had full motor strength, a negative straight leg-raising test, and intact

sensation at this same appointment. (A.R. 520.)

Notwithstanding her largely normal findings on multiple exams of Plaintiff, including in

February 2019, on March 20, 2019, Dr. Gondola completed a form titled "Unum Disability

Status Update" form where she diagnosed Plaintiff with lumbar and cervical radiculopathy and

indicated that he had "severe" neck pain and "severe low back pain."  (A.R. 572-574.)  She

restricted him to lifting no more than five pounds, walking no more than 10-15 minutes, and

sitting no more than 10-15 minutes. (A.R. 572-574; 584-592.)

Plaintiff objected to the introduction of and consideration of Dr. Gondola's treatment notes and submitted an affidavit stating that Dr. Gondola's notes were inaccurate and falsely indicated she had performed examinations on Plaintiff when she had not in fact performed them. (J.S. 42.)  In his affidavit, Plaintiff stated that the only time Dr. Gondola actually examined him was in January 2019 when she found that Plaintiff suffered from severe back pain. (A.R. 374.)  For that reason, Plaintiff considers the January 2019 treatment notes and the opinion Dr. Gondola offered to Unum that Plaintiff was totally disabled to be the only valid records from Dr. Gondola.

Plaintiff objected to the introduction of Dr. Gondolo's treatment records and suggested to the ALJ that "if [the ALJ] feel you must hear directly from the treating physician, then it would be necessary to subpoena him . . . This subpoena is necessary only if [the ALJ] feel the claimant's annexed affidavit is an insufficient basis to discount the records of Dr. Gondolo." (A.R. 370-71; J.S. ¶ 4.)   The ALJ overruled the objection, admitted the treatment records as well as Dr. Gondolo's March 2019 report to Unum, and deemed testimony unnecessary, instead finding that Plaintiff's objection and affidavit go to the weight of the evidence rather than admissibility.  (A.R. 42, 49.)

### e. Dr. Aurelio Salon, Internal Medicine Specialist – Consultative Examiner

On June 21, 2017, Dr. Aurelio Salon, M.D., examined Plaintiff at the request of the Social Security Administration.  (J.S. 11.)  Dr. Salon observed that on examination, Plaintiff was in no

acute distress.  (A.R. 489.)  With and without a cane Plaintiff's gait was slow but without an

obvious limp.  (*Id.*)  His stance was normal.  (*Id.*)  Plaintiff needed no help changing for the

exam, or help getting on and off the exam table.  (*Id.*)  Plaintiff was also able to rise from a chair

without difficulty. (*Id.*)  Importantly, the doctor noted that Plaintiff "declined to walk on heels

and toes or to do squatting," and also "declined to do lumbar spine range of motion." (A.R.

489-90.)

On examination, Plaintiff had full ranges of motion in the cervical spine, showing full

flexion, extension, and lateral flexion.  (*Id.*)  There was no abnormality of the thoracic spine.

(*Id*.)  The doctor observed no muscle spasm.  (*Id.*)  Plaintiff was noted to "have difficulty lying

down and getting up from a supine position."  (*Id.*)  There was full range of motion of shoulders,

elbows, forearms, and wrists bilaterally, as well as full range of motion of the hips, knees, and

ankles.  (*Id.*)  The doctor also observed full motor strength in all extremities, normal reflexes,

full grip strength, and no muscle atrophy. (*Id.*)  Dr. Salon also noted that Plaintiff had pain daily

and walking a block and lifting, bending, or carrying heavy and light objects would precipitate

pain or further aggravate the pain.  (A.R. 489.)

Dr. Salon further stated that the cane used by Plaintiff "is not currently medically

necessary." (*Id.*)  Therefore, the doctor concluded that "there are no objective findings to

support the fact that the claimant would be restricted in his ability to sit or stand, but his

capacity to climb, push, pull, or carry heavy objects will be currently restricted because of the

status post low back surgery." (*Id.*)  This report concluded with a determination that Plaintiff was not disabled.

Because Plaintiff refused to perform certain movements, as described above, Plaintiff challenges the validity of Dr. Salon's conclusions.  Plaintiff also sought to subpoena Dr. Salon or issue interrogatories.  The ALJ rejected both requests on the ground that the record was complete, and there were no inconsistencies in the evidence that needed to be resolved through testimony. (A.R. 43.)

## II.  *The Commissioner's Decision*

After a hearing, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act.  Although she found that Plaintiff had a severe impairment – degenerative disk disease (with lumbar radiculopathy) status – post laminectomy (20 CFR 404.1526) – she concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (*Id*.)

When assessing Plaintiff's Residual Functional Capacity (RFC), the ALJ concluded that Plaintiff retained the RFC to perform light work as defined in 20 CFR 404.1567(b) with the following additional limitations:  that he can only occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; he cannot climb ladders, ropes, or scaffolds; can only occasionally reach overhead to the left and right; cannot work at unprotected heights or with

moving mechanical parts; and can have occasional exposure to vibration. (A.R. 46.) The ALJ did not find any limitations on pushing or pulling.  (*Id.*)  The ALJ explained that she reached this determination on RFC based on objective medical imaging, relatively modest treatment records, mild to moderate clinical signs, and the claimant's range of activities of daily living. (*Id.*)  The ALJ found that Plaintiff's statements about the intensity, persistence and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record, and therefore discounted them in reaching her determination of RFC. (A.R. 47.)   For example, the ALJ noted that Plaintiff reported that his pain resolved with medication.  (*Id.*)

Based on her RFC determination, the ALJ found that Plaintiff was unable to perform his past relevant work as a hi-lo operator and window machine operator.  (A.R. 51.)  Nonetheless, after considering Plaintiff's age, education, work experience, and RFC, and relying on the testimony from Vocational Expert ("VE") Cyndee Burnett, the ALJ concluded there are jobs that exist in significant numbers in the national economy Plaintiff can perform, such as housekeeper, laundry worker, and package sorter.  (A.R. 51.)  Thus, the ALJ found that Plaintiff had not been disabled from March 14, 2017 through the date of the ALJ's decision.  (*Id.*) Plaintiff's counsel sought to subpoena certain records from the VE about the job databases on which she relied, but the ALJ denied Plaintiff's request and found that much of the information

sought was publicly available and Plaintiff's counsel had a full and fair opportunity to examine the VE on all matters at the hearing. (A.R. 42.)

## DISCUSSION

Plaintiff argues the following on appeal: (1) the ALJ's residual functional capacity assessment was not supported by substantial evidence for the year of 2019 (but concedes it was supported by substantial evidence for the years 2017 and 2018); (2) that the ALJ substituted her opinions for those of the medical providers to arrive at her conclusion; (3) that the vocational expert relied on insufficient or invalid information and thus her testimony about jobs available in the national economy was unreliable; and (4) the ALJ failed to fully develop the record by declining to issue subpoenas or interrogatories to Dr. Salon, Dr. Gondolo, and the vocational expert and in so doing deprived Plaintiff of his constitutional right of due process.

### I.   *The Applicable Law*

#### A.   *Judicial Standard of Review of Commissioner's Determination*

A court's review of a Social Security disability determination requires two distinct inquiries. *See Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987); *Dwyer v. Astrue*, 800 F. Supp. 2d 542, 546 (S.D.N.Y. 2011).  First, the court must determine whether the Commissioner applied the correct legal principles in reaching a decision.  *See Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019).  Second, the court must decide whether the Commissioner's decision is supported by substantial evidence in the record.  *Id.*  If the Commissioner's decision is

supported by substantial evidence, the ALJ's findings as to any facts are conclusive.  42 U.S.C.

§§ 405(g), 1383(c)(3).  Substantial evidence "is more than a mere scintilla" and "means such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Richardson v. Perales*, 402 U.S. 389, 401 (1971).  "Where an administrative decision rests on

adequate findings sustained by evidence having rational probative force, the court should not

substitute its judgment for that of the Commissioner."  *Yancey v. Apfel*, 145 F.3d 106, 111 (2d

Cir. 1998).

     An ALJ has an affirmative duty to develop the record on behalf of claimants, including

those represented by counsel.  *See Moran v. Astrue*, 569 F.3d 108, 112-13 (2d Cir. 2009); *Perez

v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996).  This duty exists because social security proceedings are

"essentially non-adversarial."  *Shafer v. Colvin*, No. 16-cv-7941 (LAP) (SDA), 2018 WL 4233812,

at *7 (S.D.N.Y. Feb. 15, 2018), *report and recommendation adopted*, No. 16-cv-7941 (LAP)

(SDA), 2018 WL 4232914 (S.D.N.Y. Sept. 4, 2018).  Remand is appropriate when an ALJ has

failed to appropriately develop the record.  *See, e.g.*, *Donnelly v. Colvin,* No. 13-cv-7244 (AJN)

(RLE), 2015 WL 1499227, at *8 (S.D.N.Y. Mar. 31, 2015).

     If the ALJ applied the correct legal standards and appropriately developed the record,

the court "conduct[s] a plenary review of the administrative record to determine if there is

substantial evidence, considering the record as a whole, to support the Commissioner's

decision." *Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012) (*per curiam*)

(quoting *Moran*, 569 F.3d at 112).  To be supported by substantial evidence, the ALJ must

discuss the "the crucial factors in any determination . . . with sufficient specificity to enable the

reviewing court to decide whether the determination is supported by substantial evidence."

*Calzada v. Astrue*, 753 F. Supp. 2d 250, 269 (S.D.N.Y. 2010) (quoting *Ferraris v. Heckler*, 728 F.2d

582, 587 (2d Cir. 1984)).

      If the decision denying benefits applied the correct legal standards and is based on

substantial evidence, the reviewing court must affirm; if not, the court may modify or reverse

the decision, with or without remand.  42 U.S.C. § 405(g).

### B.   Consideration of Medical Evidence

      In arriving at a decision on disability, the Commissioner must consider several factors

when considering the weight to give medical opinions in the record.  *See* 20 C.F.R. §§

404.1520c(a)-(c), 416.920c(a)-(c); *see also Andrew G.*, 2020 WL 5848776 at *5 (citing Revisions

to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844, at

5867-68 (Jan. 18, 2017)).  The factors are as follows: (1) supportability, (2) consistency, (3)

relationship with the claimant (which has five sub-factors to consider), (4) specialization, and (5)

other factors.  20 C.F.R. §§ 404.1520c(c), 416.920c(c).  The ALJ must explain her approach to the

first two factors, but need not expound on the consideration given to the rest of the factors.  20

C.F.R. §§ 404.1520c(b), 416.920c(b).  The Commissioner need not discuss each and every

medical opinion in the record and may apply the factors holistically.  20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1).

The first factor – supportability – looks at how well a medical source supported and explained his/her opinions about the patient.  The strength of a medical opinion is increased as the relevance of the objective medical evidence and explanations increase.  20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).  The second factor – consistency – looks at whether a medical provider's findings and opinions are consistent with those of other medical providers and medical evidence.  The more consistent a particular medical source/opinion is with other evidence in the medical record, the stronger that medical opinion becomes.  20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(3).

The third factor—relationship with the claimant—incorporates the following five sub-factors: (i) length of treatment; (ii) frequency of examinations (longitudinal understanding); (iii) purpose of the treatment; (iv) extent of the treatment (detail of understanding); and (v) examining relationship (i.e., in-person vs. consulting only).  20 C.F.R. §§ 404.1520c(c)(3)(i)-(v), 416.920c(c)(3)(i)-(v).  The fourth factor—specialization—recognizes that a specialist giving an opinion within their specialty may be more persuasive than an opinion given by a non-specialist or a specialist in a less relevant field.  20 C.F.R. §§ 404.1520c(c)(4), 416.920c(c)(4).  Finally, the fifth factor is a catch-all that gives an ALJ the ability to consider anything else in the record that may "tend to support or contradict a medical opinion."  20 C.F.R. §§ 404.1520c(c)(5),

416.920c(c)(5).  By way of example, later-generated medical evidence showing deterioration or improvement of a medical condition could render a prior opinion more or less persuasive.

## II.  *Analysis*

### A.  Development of the Record and Due Process

A threshold issue in this case is whether the ALJ failed to develop the record.  This issue impacts whether the there was substantial evidence in the record on which the ALJ could rely in making her decision that Plaintiff is not disabled within the meaning of the SSA.  Here, the ALJ relied more heavily on the 2017 opinion of consultative examiner Dr. Salon, Dr. Gondolo's treatment records and MRI reports in reaching her conclusions, discounting the records and opinions of Nurse Practitioner Mesquita and the March 2019 opinion of Dr. Gondolo, which the ALJ found to be inconsistent with his treatment records and other evidence in the record, including the MRIs.

Plaintiff sought a subpoena for testimony, or in the alternative answer to interrogatories, from Dr. Salon to better understand how he reached his conclusions when Plaintiff had not in fact performed all of the movements requested and necessary for evaluation.  Additionally, Plaintiff took the position that Dr. Gondolo's treatment notes were fabricated and, as noted above, objected to have her notes admitted into evidence.  In the alternative, Plaintiff suggested that if the ALJ felt it was necessary they could subpoena Gondolo to explain inconsistencies in her notes.  Lastly, Plaintiff challenged the databases on

which the VE relied in opining that there were jobs in the national economy that Plaintiff could

perform.  Without the above information, Plaintiff contends the record was incomplete and not

fully developed.  Plaintiff also contends he was denied due process as a result.

The issuance of subpoenas in social security administrative proceedings is governed

primarily by 20 C.F.R. § 404.950(d)(1), which provides ". . . [that] [w]hen it is reasonably

necessary for the full presentation of a case, an administrative law judge or a member of the

Appeals Council may, . . . at the request of a party, issue subpoenas for the appearance and

testimony of witnesses and for the production of books, records, correspondence, papers, or

other documents that are material to an issue at a hearing." 20 C.F.R. § 404.950(d)(1); *Yancey v.*

*Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).  "The plain language of this section clearly places the

decision to issue a subpoena within the sound discretion of the ALJ." *Id.*  The Social Security

Program Operations Manual System (POMS) similarly provides an ALJ discretion to determine

the relevance of information sought via interrogatory and to issue an interrogatory.  POMS DI

29501.025.

A decision not to subpoena is subject to an 'abuse of discretion' review. *Oliphant v.*

*Astrue*, 11-CV-2431 (KAM), 2012 WL 3541820, at *23 (E.D.N.Y. Aug. 14, 2012) (citing *Yancey*,

145 F.3d at 113 (concluding that the ALJ fairly chose not to subpoena where a subpoena would

not have added "anything of value" and no reasons existed to suspect the physician's reports

were biased or inaccurate)).  Courts find no abuse of discretion when the ALJ "allowed

[plaintiff] a fair and meaningful opportunity to present her case and [ ] had no indication that [the physician's] reports were inaccurate or biased or that subpoenaing [the physician] would have added anything of value to the proceedings." *Yancey*, 145 F.3d at 113.

In this case, the ALJ did not abuse her discretion with respect to the records and information sought from Drs. Salon and Gondolo or the VE.  While it is true that Dr. Salon's opinion was issued without the benefit of Plaintiff performing certain physical movements during the exam, no additional discovery from Dr. Salon would shed light on Plaintiff's functioning at that time.  Dr. Salon was unable to evaluate whether Plaintiff could do certain movements, indicated as such in his report, and issued an opinion based on what he did observe.  The discovery sought by Plaintiff seeks speculation about Plaintiff's functioning based on tests not performed.  Therefore, the discovery via interrogatories or testimony would not have provided any meaningful addition to the record.  *See generally, Henny v. Comm'r of Soc. Sec.*, No. 15-CV-0629 (RA), 2017 WL 1040486, at *14 (S.D.N.Y. Mar. 15, 2017) (Court found that ALJ did not err in denying claimant's subpoena request for a number of reasons, one being that there was no specific reason why this subpoena was necessary or helpful for his case.)

Likewise, it was not an abuse of discretion to admit Dr. Gondolo's treatment records and elect not to subpoena testimony.  To start, it was proper to admit the treatment records because Dr. Gondolo was Plaintiff's treating neurologist for a nearly four-year period, rendering her records relevant and necessary for a complete record of Plaintiff's treatment.  As to the

18

subpoena, it is notable that Plaintiff did not formally request that Dr. Gondolo be subpoenaed. Rather, Plaintiff's counsel merely suggested that if the ALJ thought it would be helpful, the ALJ could subpoena Dr. Gondolo.  Plaintiff did not identify any gap in the record that required clarification or state why cross examination of Dr. Gondolo was necessary.  See *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) ("Where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information . . .").  A review of the record reveals that the ALJ had sufficient information to assess the weight to give to Dr. Gondolo's treatment records and March 2019 opinion including, without limitation, records from other doctors, Plaintiff's affidavit and testimony, and objective tests such as MRIs and nerve conduction studies.  See *Richardon v. Perales*, 402 U.S. 389, 402 (1971) (no due process violation; holding the a report from a treating doctor may be received as evidence in a disability hearing and, despite its hearsay character and an absence of cross-examination, and despite the presence of opposing direct medical testimony and testimony by the claimant himself, may constitute substantial evidence supportive of a" denial of benefits "when the claimant has not exercised his right to subpoena the reporting physician"); *Yancy*, 145 F.3d at 113 (claimant's right to cross-examine an examining physician after requesting a subpoena is not absolute).

Similarly, the information Plaintiff sought from the VE was not necessary for a complete record.  Plaintiff's counsel was provided an opportunity to and did fully cross examine the VE at

19

the hearing, including about the job databases (Department of Labor statistics and SkillTRAN) she used in reaching her opinion.  No further information was needed to cross examine the VE or for the ALJ to consider before accepting the VE's testimony that there were light work jobs in the economy that Plaintiff could perform even taking into account his limitations.

Plaintiff's reliance on *Biestek v. Berryhill*, 139 S. Ct. 1148 (2019), to support his argument is misplaced.  In *Biestek v. Berryhill*, the plaintiff argued that a vocational expert's testimony regarding the number of available jobs could not constitute substantial evidence because the vocational expert declined to provide the underlying her private labor market survey data supporting her testimony. 139 S. Ct. at 1153.  The Supreme Court rejected this argument, recognizing that the vocational expert had years of professional training and experience, had explained her underlying methodology, had answered questions posed by the ALJ and the claimant's attorney at the hearing, and found the expert's testimony constituted substantial evidence even in the absence of the underlying data.  *Id.* at 1155-56.  In this case, the VE relied on publicly available data.  And, like the VE in *Biestek*, explained her extensive training and experience, provided her methodology and answered Plaintiff's questions at the hearing. Accordingly, the absence of additional information about the data on which she relied was not necessary, and the information provided was sufficient to constitute substantial evidence upon which the ALJ could reasonably rely.  *Id.*; *See also McIntyre v. Colvin*, 758 F.3d 146, 152 (2d Cir. 2014) ("vocational expert is not required to identify with specificity the figures or sources

supporting his conclusion, at least where he identified the sources generally."); *Dennison v. Berryhill,* No. 17-CV-1059F, 2019 WL 2088506, at *9 (W.D.N.Y. May 13, 2019) (where Vocational expert made clear at the administrative hearing that she relied on Job Browser Pro software by SkillTRAN, a comprehensive information database used by vocational counselors, in arriving at the number of each of the three jobs available in the national economy.); *Diaz v. Berryhill*, No. 3:17-CV-00735 (JCH), 2018 WL 4462366, at *9 (D. Conn. Sept. 18, 2018) (Court found that Plaintiff's objections to the vocational experts qualifications and methodology lacked merit where he used SkillTRAN and Job Browser Pro software.); *Frazier v. Comm'r of Soc. Sec.*, No. 16 CIV. 4320 (AJP), 2017 WL 1422465, at *19 (S.D.N.Y. Apr. 20, 2017) (Plaintiff argued that the testimony of vocational expert as to the numbers of jobs existing in the national economy was not reliable and not supported by substantial evidence. The Court found that his use of the SkillTRAN software was reliable.).

Given the above, Plaintiff's claim that he was denied his constitutional right to procedural due process is without merit.  Procedural due process in the context of social security cases requires that a plaintiff be given an opportunity to be heard "at a meaningful time and in a meaningful manner."  *Mathews v. Eldridge*, 424 U.S. 319, 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).  Due process is a flexible concept and what is required to provide due process depend on the interests impacted by the official action, the risk of an improper deprivation of rights given the procedures used, and the government's interest.  *Id*. at

335.  In the social security context, due process requires a full and fair hearing.  *Richardson v.*

*Perales*, 402 U.S. at 401-02.  The Second Circuit, in evaluating Supreme Court precedent

discussing due process in social security proceedings, held that due process is not offended by

permitting an ALJ discretion to deny a subpoena request if cross examination is not reasonably

necessary to full development of the evidence in the case.  *Yancy*, 145 F.3d at 113.  In this case,

having carefully reviewed the administrative record, none of the discovery requested by

Plaintiff was reasonably necessary to fully develop the record.  Therefore, there was no due

process violation.

### C.  Substantial Evidence

Plaintiff concedes that the ALJ's decision on RFC is supported by substantial evidence for

years 2017 and 2018, but states that it is not supported by substantial evidence in 2019. (J.S.

47.)  He also argues that the ALJ improperly substituted her lay opinions for those of the

medical doctors or cherry-picked from the record to arrive at her finding.   He also takes issue

with the ALJ not including a "pushing and pulling" restriction in the RFC determination.

As noted above, the ALJ must look at various factors when assessing the medical

evidence in the record and explain why she is relying or not relying on certain medical opinions

and sources in reaching a decision on RFC by explicitly addressing both the supportability and

consistency factors.  20 C.F.R. §§ 404.1520c(c)(1-2), 416.920c(c)(1, 3).  An ALJ must weigh

conflicting medical evidence in arriving at a decision on RFC, and her conclusion need not

"perfectly correspond with any of the opinions of medical sources."  *Matta v. Astrue*, 508 Fed.Appx. 53, 56 (2d Cir. 2013).  That being said, an ALJ may not "cherry-pick" medical opinions that support her opinion on RFC and ignore opinions that do not.  The ALJ should discuss reasons for relying on one opinion as opposed to another.  *Artinian v. Berryhill*, No. 16-CV-4404 (ADS), 2018 WL 401186, at *8 (E.D.N.Y. Jan. 12, 2018) ("Federal courts reviewing administrative social security decisions decry 'cherry picking' of relevan[t] evidence, which may be defined as inappropriately crediting evidence that supports administrative conclusions while disregarding differing evidence from the same source.").  An ALJ also may not substitute her own lay opinions for those of a doctor.  *Riccobono v. Saul*, 796 F.App'x 47 (2d Cir. 2020); *Balsamo v. Chater*, 142 F.3d 75, 80-81 (2d Cir. 1998).

The district court conducts a plenary review of the administrative record to determine if there is substantial evidence supporting the ALJ's finding, considering the record as a whole. *Brault v. Social Security Administration, Commissioner*, 683 F.3d 443, 447 (2d Cir. 2012) (per curium); *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009).  "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts 'only if a reasonable factfinder would have to conclude otherwise.'" *Brault*, 683 F.3d at 448 (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)); *see also* 42 U.S.C. § 405(g) ("[F]indings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").

Here, the ALJ's determination is supported by substantial evidence, and the claims of cherry-picking or substituting lay opinions for medical ones are without merit.  The ALJ acknowledged Plaintiff's condition prior to his laminectomy surgery on March 14, 2017 and noted that subsequent MRIs taken in July 2018 and January 2019 showed improvement with no new evidence of pre-surgical disc herniation or new disc herniation. (A.R. 42-51; 502-03.)  The ALJ considered this evidence in parallel with Plaintiff's nerve conduction studies of his bilateral upper and lower extremities that were performed in May 2017 and April 2018 by Dr. Gondolo – all of which revealed no abnormalities and ruled out the presence of lumbar and/or cervical radiculopathy. (A.R. 553-65.)  Additionally, the ALJ considered the clinical examinations of Plaintiff's treating medical sources, Nurse Mesquita and Dr. Gondolo, for the relevant time period.  The ALJ noted and discussed conflicting evidence, including from Dr. Salon and objective medical tests, and arrived at a decision based on the record as a whole.  The ALJ also considered the Plaintiff's own statements to his medical providers and at the hearing.

The ALJ explained why she found the assessments of Nurse Mesquita to be unpersuasive—they lacked narrative and corresponding treatment records to support or link the severe functional limits she assessed and were contradicted by musculoskeletal examinations performed by Dr. Gondolo and the opinion of Dr. Salon, as well as the post-surgical MRIs.  (A.R. 49.)  And, indeed, while Dr. Mesquita's treatment notes reflect that Plaintiff had stiffness in the neck and back, decreased ranges of motion in the neck and back, and an

unsteady gait, her notes also showed full ranges of motion in the extremities and no mention of

impaired neurological functioning. (A.R. 508, 510, 512, 513-17.)   Dr. Mesquita's treatment

notes indicated that Plaintiff's complaints of pain were controlled with medication. (A.R. 47,

512.)

The ALJ explained why she found Dr. Gondolo's March 2019 opinion to be unpersuasive

as well, stating that it was inconsistent with the post-surgical MRIs and the majority of her

treatment records indicating no evidence of pain or reduced range of motion.  (A.R. 49)  The ALJ

explained that she considered the Plaintiff's affidavit, which suggested that the treatment

records were falsified, but noted that the treatment records were in fact consistent with

objective tests—the post-surgical MRIs.  (*Id*. at 48-49)  Indeed, Dr. Gondolo's treatment notes

from 2017 through 2019, with the exception of one note, showed no abnormal results, full

motor strength, normal gait, negative straight leg raising test, and no spasm or tenderness.

(A.R. 521-52, 584-92.)  The ALJ noted that Dr. Gondolo's February and August 2019 treatment

notes reflect that Plaintiff denied any fatigue, malaise, joint pain, stiffness, or muscle cramps

and that musculoskeletal examinations were unremarkable with a normal range of motion

without pain, and negative straight leg raise test.  (A.R. 48.)  The ALJ also noted that even in the

January 2019 treatment notes—the ones that Plaintiff admits were reflective of an actual

physical exam—Dr. Gondolo noted that foramina compression test, straight leg raise test and

Tinel's test were negative, that the ulnar nerves exhibited no tenderness, that the cervical and

thoracic spine had a full range of motion, and that Plaintiff demonstrated a normal gait base and could heel and toe walk and tandem walk.  Dr. Gondolo also noted that there was no lumbar spine pain with extension or flexion, and full strength in upper and lower extremities. (A.R. 48.)

Similarly, the ALJ explained why she found the opinion of Dr. Salon to be only somewhat persuasive—that it was based on an exam conducted only three months after Plaintiff's 2017 surgery and prior to post-surgical MRIs and without the benefit of lumbar spine range of motion testing.  (A.R. 49.)  Nonetheless, the ALJ found it somewhat persuasive insofar as it was consistent with exam results showing a full range of motion in the cervical spine and full strength in upper and lower extremities bilaterally.  (*Id*. at 49, 502-03, 584-92.)  Dr. Salon also observed that the Plaintiff did not need help changing, could get on and off the examination table without help and could rise from a chair without difficulty.  (A.R. 47.)  The ALJ also noted that at that time, the Plaintiff stated he could walk one block before needing to rest.  (A.F. 46.) The ALJ also noted that in his first post-operative visit with Dr. Merola, Plaintiff reported no acute complaints.  Dr. Merola's records showed, upon physical exam, that Plaintiff's sensory, motor and neurological function in upper and lower extremities was stable, that his gait was bilateral heel-to-toe reciprocal.  (A.R. 47.)

Rather than cherry-pick or substitute her own opinion, the ALJ grappled with inconsistent records and arrived at a conclusion as to Plaintiff's RFC.  For example, the ALJ

noted that in late 2017, although the Plaintiff complained about neck and back pain with decreased range of motion and numbness and tingling in the lower extremities, Dr. Gondolo's physical examinations showed full range of motion and full strength. Similarly, in 2018, notwithstanding continued complaints, Plaintiff reported his pain was well controlled on his current pain medications and that nerve conduction studies of both lower and upper extremities were normal. (A.R. 48; 502-03, 521-52, 567, 584-92.) Thus, the ALJ properly explained how the various medical opinions were supported or not and consistent or not with other opinion and evidence in the record, as required by 20 C.F.R. §§ 404.1520c(b), 416.920c(b).

Based on the Court's own plenary review of the record and in light of the above, the Court finds there is substantial evidence in the record supporting the ALJ's RFC for 2019, including Dr. Gondolo's treatment notes from a month before the hearing and the MRI from 2019, as well as 2017 and 2018.[5] Additionally, Plaintiff concedes there is substantial evidence in the record supporting the ALJ's RFC for 2017 and 2018. (J.S. 47.) To be clear, based on the record, this Court cannot say that no reasonable factfinder could have reached the ALJ's conclusions about RFC or available jobs in the national economy. Thus, this Court must affirm

---

[5] Plaintiff 's objection to the ALJ's failure to include a pushing a pulling limitation in the RFC based on Dr. Salon's opinion that Plaintiff was limited in that regard is without merit. The ALJ considered evidence post-dating Dr. Salon's examination and opinion in arriving at the RFC that would rule out a pushing and pulling limitation including negative nerve conduction studies in the upper extremities, a normal cervical spine MRI, and strength tests showing normal strength in upper extremities. The ALJ stated she found Dr. Salon's opinion only somewhat persuasive and, as discussed above, was entitled to determine RFC based on the record as a whole.

the findings.  *See Brault*, 683 F.3d at 448. See also *Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir.

1991) (reviewing courts must afford Commissioner's determination considerable deference and

cannot substitute their own judgment even if it might justifiably have reached a different result

upon a *de novo* review).

<u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings is denied,

and Defendant's motion for judgment on the pleadings is granted (ECF No. 25.)

Dated: October 21, 2021
New York, New York

*Katharine H. Parker*

KATHARINE H. PARKER
United States Magistrate Judge

28